UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MEHRDAD SABZEVARI, | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-03-3240 |
| | § | |
| THE RELIABLE LIFE INSURANCE CO., | § | |
| *Defendant*. | § | |

**OPINION ON SUMMARY JUDGMENT**

In this Title VII suit, plaintiff Mehrdad "Mike" Sabzevari contends The Reliable Life Insurance Company (Reliable), his former employer, discriminated against him due to his Iranian national origin. He alleges Reliable failed to promote him from assistant to district manager, and retaliated against him for engaging in activity protected under Title VII of the Civil Rights Act of 1964. Reliable seeks summary judgment on all claims (Dkt. 28). For the reasons that follow, Reliable's motion is granted.

**Background**

Sabzevari began his employment with Reliable in 1993, as an insurance agent. In August 1996 Sabzevari was promoted to assistant manager. In August 1999, he transferred at the request of the company from Austin to Beaumont. Sabzevari claims that in January 2000, he expressed his interest in promotion and advancement to his manager. He was concerned openings were available that he was not being informed about nor given the opportunity to apply for. In September 2000, Reliable promoted Doug Dixon, another assistant manager in the Beaumont office, to district manager in its Sikeston, Missouri office. Dixon is a white male. Sabzevari maintains this position was filled without his knowledge and he was not given an opportunity to apply.

The plaintiff states that in August and September 2000, he informed his co-workers and supervisors of his belief that the company's failure to promote "foreign race" employees violated Title VII and the company's handbook. At the September 2000 district office meeting announcing the Dixon promotion, Sabzevari protested that he was not promoted because of his race. Sabzevari asserts this questioning of Reliable's "practices regarding promotion and insurance agent hiring criteria" led to retaliation from Reliable.[1] First, Sabzevari claims that his transfer request back to Austin in October 2000 was denied, even though a similar prior request in June had been approved. (Sabzevari at first accepted the June transfer but then declined for financial reasons.)

Second, in November 2000, Reliable told Sabzevari that he was required to live within twenty-five miles of its Beaumont office and that he had sixty days to relocate. Sabzevari asked the relocation be put off until the end of school year so as not to disrupt the education of his children. Sabzevari further states that his work environment became so hostile at this point that he was placed on medical leave by his treating physician, Dr. Vijesh Patel, in January 2001. On March 8, 2001, Dr. Patel released Sabzevari to return to work without restriction.

Sabzevari did not return to work at this time, because he sought certain conditions – that his Title VII concerns be addressed by the company and that he be transferred to Austin.[2] On March 22, 2001, Reliable sent a letter terminating the plaintiff's employment "as of March 8, 2001" for not returning to work after being released by his doctor.[3] Reliable, however, contends Sabzevari actually quit his job before receiving this letter by taking employment with American National Insurance

---

[1]  Dkt. 28, Ex. 1.

[2]  *See* Dkt. 28, Ex. 10B-10F.

[3]  *See* Dkt. 28, Ex. 10G.

Company. While Sabzevari was on medical leave, he applied for employment with American National on January 9, 2001. On March 19, 2001, three days before the termination letter was sent, Sabzevari signed an employment agreement with American National. The March 30th American National payroll records indicate he had been on their payroll for the prior two weeks.[4]

Sabzevari filed a charge of discrimination with the Equal Employment Opportunity Commission on March 15, 2001, and an amended charge of discrimination on August 29, 2002. The 2001 charge alleged national origin discrimination and retaliation for Reliable's refusal to transfer Sabzevari to Austin and its insistence he relocate to within twenty-five miles of the Beaumont district office.[5] The August 25, 2002 charge added the claim that Reliable failed to promote Sabzevari because of his national origin.[6]

## Legal Standards

Reliable seeks summary judgment on all of Sabzevari's claims. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cooper Tire & Rubber Co. v. Farese*,

---

[4]  *See* Dkt. 28, Ex. 5.

[5]  *See* Dkt. 28, Ex. 1.

[6]  *See* Dkt. 28, Ex. 1.

423 F.3d 446, 454 (5th Cir. 2005). An issue is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248.

In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on its pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255; *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

## Analysis

Reliable's grounds for summary judgment on the failure to promote claim are: (1) this allegation was not timely filed with the EEOC and Sabzevari therefore did not exhaust his administrative remedies; (2) Sabzevari cannot establish a prima facie case because he did not actually apply for the district manager position; (3) Reliable has a legitimate, non-discriminatory explanation in that Dixon was more qualified for the district manager position than Sabzevari; (4) Reliable is entitled to the favorable "same actor" inference because the same person who hired and promoted Sabzevari to assistant manager made the decision about Dixon's promotion to district manager. Reliable maintains that it is entitled to judgment as a matter of law on Sabzevari's retaliation claim because he did not suffer an adverse employment action.

**1.      Failure to Promote**

Sabzevari alleges Reliable failed to promote him in September or October 2000 due to discriminatory and retaliatory animus. He amended his EEOC charge to include this act in August 2002, more than 300 hundred days later. It is therefore time barred, and the court cannot consider it.

A plaintiff must exhaust his administrative remedies by a filing a charge of discrimination with the EEOC prior to seeking judicial relief. *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995).[7] Under Title VII, a plaintiff "shall" file an employment discrimination charge with the EEOC either 180 or 300 days after an "alleged unlawful employment practice occurred." *See* 42 U.S.C. § 2000e-5(e)(1); *see also National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10 (2002).[8] A claim is time barred if not filed within these time limits. *National R.R.*, 536 U.S. at 109. Generally the limitations period begins on the date that the discriminatory act occurred, and a plaintiff cannot sustain his claims based on incidents occurring before the 300 day period. *See National R.R.*, 536 U.S. at 113; *Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989). Despite not being a jurisdictional prerequisite to filing suit, this is a statutory precondition to maintenance of any action under Title VII. 42 U.S.C. § 2000e-5(e); *National R.R.*, 536 U.S. at 113.

---

[7]    One of the central purposes of the EEOC charge is to put the employer on notice of the existence and nature of the charges. *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878-89 (5th Cir. 2003), *cert. denied*, 540 U.S. 1107 (2004). Allowing a complaint to encompass allegations outside of the ambit of the predicated EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge. *Cheek v. Western & S. Life Ins. Co*, 31 F.3d 497, 500 (7th Cir. 1994); *see also Clayton v. Rumsfeld*, 106 Fed. Appx. 268, 271 (5th Cir. 2004) (unpublished).

[8]    Texas is a "deferral" state, meaning that claimants in Texas must file their charge of discrimination within 300 days after the alleged unlawful employment practice occurred. *See Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998); *Blumberg v. HCA Mgmt. Co., Inc.*, 848 F.2d 642, 645 (5th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989).

Sabzevari argues that Reliable should be equitably estopped from asserting the time-bar because it knew about his claim of failure to promote and addressed it in its position statement to the EEOC. The timeliness requirement is in fact subject to equitable exceptions. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982). Under the equitable estoppel doctrine invoked by Sabzevari, an employer is estopped from relying on the filing periods if the employer misrepresented or concealed facts necessary to support a discrimination charge and thereby caused the plaintiff not to assert his rights within the limitations period. *See Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 878-79 (5th Cir. 1991), *cert. denied*, 502 U.S. 868 (1991). The plaintiff has the burden of proving this form of estoppel. *Id.* at 879.

Here there is no allegation Reliable concealed facts or misled Sabzevari causing him not to timely file his claim of failure to promote. As evidenced by his protestations at the district office meeting, Sabzevari was immediately aware that he had not been promoted. Nor has Sabzevari offered any other persuasive reason why the filing deadline should be equitably extended in this case. The Supreme Court has instructed that equitable doctrines are to be "applied sparingly" when altering the time period for filing an employment discrimination charge. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). With this in mind, the court finds that Sabzevari has not carried his burden of demonstrating that an equitable waiver of the time requirement is applicable.[9]

---

[9] A common equitable exception is for continuing violations. Under the continuing violation theory, a court may consider otherwise time-barred incidents that occurred outside the three hundred day statutory period. *See, e.g., Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989). A failure to promote, however, is considered a discrete discriminatory act that occurs on a given day, rather than a continuing violation. *See National R.R. Corp. v. Morgan*, 536 U.S. 101, 114 (2002). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. Thus, the continuing violation exception does not apply, nor does Sabzevari invoke the "relation back" doctrine.

Sabzevari's untimely filing precludes his claim of failure to promote, and Reliable is entitled to judgment as a matter of law on this cause of action.

**2.     Retaliation**

Turning next to Sabzevari's cause of action for retaliation, Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he had made a charge ... under this subchapter." 42 U.S.C. § 2000e-3(a). A retaliation claim has three elements: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse action against the employee; and (3) a causal connection exists between the protected activity and the adverse employment action. *Hockman v. Westward Commc'ns LLC*, 407 F.3d 317, 330 (5th Cir. 2004); *Walker v. Thompson*, 214 F.3d 615, 628-29 (5th Cir. 2000). An employee has engaged in activity protected by Title VII if he has either (1) "opposed any practice made an unlawful employment practice" by Title VII, or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a); *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996).

Sabzevari complains Reliable retaliated against him with respect to two discrete employment actions: (i) the denial of the Austin transfer, and (ii) the termination of his employment.[10]

---

[10]     *See* Dkt. 36, p. 14.

**(i)     Denial of Transfer**

Reliable does not contest that Sabzevari satisfies the first element of retaliation. Under Title VII's "opposition clause," an employee meets this threshold if he has a reasonable belief that his employer engaged in unlawful employment practices. *See Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996).

Reliable does dispute that Sabzevari has established the second and third elements of retaliation, denying that it took an adverse employment action against Sabzevari, or that there was any causal connection between the purported adverse actions and his raising concerns about Reliable's promotion practices.

An employment decision is only adverse where it is an "ultimate employment decision." *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707-08 (5th Cir. 1997), *cert. denied*, 522 U.S. 932 (1997). The denial of the transfer request to Austin was clearly not an ultimate employment decision under Fifth Circuit precedent. *See, e.g., Burger v. Central Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) ("[r]efusing an employee's request for a purely lateral transfer does not qualify as an ultimate employment decision"); *see also Wakefield v. State Farm Ins.*, 229 F.3d 1148 (5th Cir. 2000) (unpublished table decision) (an opportunity to be reviewed for a promotion or a lateral move are not ultimate employment decisions); *see generally Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 n.2 (5th Cir. 2003) (per curiam) (cataloguing the Fifth Circuit's taxonomy of "ultimate employment decisions"). Nearly every other circuit has likewise held that a lateral transfer

does not amount to an adverse employment decision,[11] with this explanation coming from the Seventh Circuit:

> Obviously a *purely* lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action. A transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either. Otherwise every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.

*Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) (emphasis in original) (citations omitted).

Sabzevari argues the Austin transfer would not have been a purely lateral transfer because it would have "provide[d] him a more secure future and one free of harassment."[12] This is unpersuasive for several reasons. First, no summary judgment evidence is provided in support of this assertion. *Cf. Wakefield*, 229 F.3d 1148. Second, employment actions are adverse only where pay, benefits or level of responsibility are affected. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004); *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003), *cert. denied*, 540 U.S. 817 (2003). Sabzevari was seeking transfer from an assistant manager position in Beaumont to an assistant manager position in Austin. He has offered no proof that this transfer would have resulted in different pay, benefits, or level of responsibility. Third, presumably most employees who seek a transfer do so because they believe it will help secure their future or place them in a better work environment. But this subjective expectation by itself does not affect whether a transfer is "lateral" or not.

---

[11] *But see Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir. 1997) (refusal to transfer can support retaliation claim where such is a customary practice).

[12] Dkt. 36, p. 14.

**(ii)     Termination**

Turning next to the purported retaliatory termination, there are several difficulties with this claim.  First, the summary judgment evidence suggests that Sabzevari terminated the employment relationship before Reliable did.  While Sabzevari's termination was effective March 8, 2001, Reliable's decision was announced on March 22, 2001.  As of that date, Sabzevari had effectively resigned from Reliable by taking a position with another company (as of at least March 19, 2001).

Assuming *arguendo* that the employment relationship still existed as of March 22, 2001, Sabzevari has not produced evidence of a causal nexus between his protests and the termination. The standard for proving causal nexus in retaliation cases is "causation-in-fact" or "but-for" causation.  *See Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir. 1999) ("[t]o carry [his] ultimate Title VII burden, an employee must also show that [his] employer would not have taken the adverse employment action 'but for' the employee's participation in the protected activity"); *see also Septimus v. University of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).  Nothing has been put forward suggesting that but for his protesting of the Dixon promotion and expressing his belief that he was not promoted due to his national origin, he would not have been fired despite failing to return to work after his March 8th medical release.

Moreover, the timing of the putative retaliation, an important factor in determining the presence of a causal link, also tends to negate any inference of a causal connection between his protests and Reliable's decision.  *See, e.g., Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994).  The Supreme Court in *Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam*)*, cited with approval circuit court decisions holding that intervals of three or four months

between an employer's knowledge of protected activity and an adverse employment action were insufficient to suggest causation. Here, Sabzevari raised his concerns about Reliable's practices in the August/September 2000 timeframe. The termination letter was sent March 22, 2001, some six months or more later. This temporal gap seriously undermines any inference of retaliation by Reliable.

Further, assuming for the sake of argument that Sabzevari has established a prima facie case of retaliation, he has also offered no evidence to rebut or contradict Reliable's legitimate, non-retaliatory explanation for the termination letter, namely, that he did not return to work. Sabzevari was released to return to work without restriction by his physician on March 8, 2001. Corresponding with Sabzevari's counsel, Reliable conveyed its expectation that Sabzevari return to work when that happened.[13] Sabzevari did not do so. Reliable therefore construed Sabzevari's unexplained absence for nearly two weeks as a "constructive quit."[14] There is no proof that this was pretext for retaliation. Accordingly, there being no genuine issue of material fact, summary judgment must be granted in favor of Reliable on the retaliation claim.

### 3. Constructive Discharge

Reliable also moves for summary judgment on Sabzevari's constructive discharge claim, "if any," because it falls outside the scope of his EEOC charges.[15] The court agrees. As discussed

---

[13] *See* Dkt. 28, Ex. 10B-10E.

[14] Dkt. 28, Ex. 10G.

[15] Reliable points out that Sabzevari did not plead constructive discharge in his complaint. *See* Dkt. 1. Sabzevari counters that he did not quit – Reliable terminated him. *See* Dkt. 36, n.11. Sabzevari offers the constructive discharge claim in his response to the summary judgment motion in the alternative – to the extent that the trier of fact might conclude he quit, then he maintains he was constructively discharged. *Id*. Because the court has

above, a plaintiff must first exhaust his administrative remedies by filing a charge with the EEOC. *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir. 1995). A civil lawsuit filed under Title VII is "limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970); *see also Thomas v. Texas Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000). Failure to assert a claim in the charge or its lack of development in the course of a reasonable investigation of the charge precludes a plaintiff from later lodging the claim in a civil suit. *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 711-12 (5th Cir. 1994). Sabzevari did not assert constructive discharge in either of his EEOC charges.

This is not necessarily fatal to an assertion of discrimination if it is "like or related to" other claims of prohibited employment actions presented in the EEOC charge. *See, e.g., Dollis*, 77 F.3d at 781. That is not the case here. The following is the full text of Sabzevari's statement in his amended EEOC charge filed August 29, 2002:

> I.  I have been employed with Respondent since October 1993. In August or September 2000, I began to question Respondent's practices regarding promotion and insurance agent hiring criteria which I believed to be in violation of Title VII of the Civil Rights Act of 1964, as amended. In October 2000, I requested that I be transferred back to the Austin office. Initially, the request was granted without issue. This request was not honored. Instead, I was required to move within 25 miles of Beaumont or be demoted.
>
> II. Reynard Rayson, District Manager, stated that I could transfer to Austin. November 21, 2000, Michael Wheeler, Division Manager, mailed me a letter stating that if I did not move within 25 miles of the district office in

---

found that Sabzevari left his employment with Reliable before Reliable terminated him, and because Sabzevari is the non-movant, the court will give the plaintiff the benefit of the doubt on this matter and address the constructive discharge claim.

> Beaumont, I could not continue in my current position of Assistant Manager in Beaumont.
>
> III. I believe I am being discriminated against because of my national origin, Iranian, and in retaliation for reporting Respondent's discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended.
>
> IV. I wish to amend this charge to include failure to promote. I was denied promotion to the position of District Manager in Missouri, on or about September 2000, due to my national origin.[16]

As is readily seen, Sabzevari's constructive discharge allegation is not like or related to the national origin and failure to promote claims in the EEOC charge. *Cf. Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993); *O'Brien v. Lucas Assoc. Personnel, Inc.*, 127 Fed. Appx. 702, 708 (5th Cir. 2005) (unpublished) (hostile work environment claim beyond the scope of EEOC claim where plaintiff only alleged Title VII violation for discharge/demotion); *Clayton v. Rumsfeld*, 106 Fed. Appx. 268, 271 (5th Cir. 2004) (unpublished) (finding that former employee field to raise the issue of constructive discharge in the administrative process, and was therefore precluded from pursuing that claim in her Title VII suit).

Sabzevari therefore did not exhaust his administrative remedies on the constructive discharge claim, and Reliable must be granted summary judgment on this issue.

### 4. Punitive Damages

Lastly, Reliable seeks judgment as a matter of law on Sabzevari's claim for punitive damages. Under Title VII, "A complaining party may recover punitive damages under this section against a respondent ... if the complaining party demonstrates that the respondent engaged in a

---

[16] Dkt. 28, Ex. 1.

discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981(b)(1). No evidence offered by Sabzevari supports the assertion that Reliable acted with malice or reckless indifference. Moreover, there being no viable claims left, the issue of damages is moot.

## Conclusion

For these reasons, Reliable Life Insurance Company's motion for summary judgment is GRANTED.

Signed on June 15, 2006, at Houston, Texas.

_____
Gray H. Miller
United States District Judge